Marshall E. Bluestone, Esq. (SB 151632)
BLUESTONE FAIRCLOTH & OLSON, LLP
1825 4th Street
Santa Rosa, CA 95404
Telephone:    707-526-4250
Facsimile:    707-526-0347
Email: marshall@bfolegal.com

*Exempt from Filing Fees per Gov. Code § 6103*

Attorneys for County of Sonoma; Sonoma County
Board of Supervisors; Sonoma County Sheriff's
Department; Sonoma County Sheriff Mark Essick

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MICHELLE SAXTON, as Guardian ad
Litem for M.M., a minor; JAMES CLARK;
ESTATE OF AMBER MARCOTTE;
ESTATE OF MICHAEL MARCOTTE,

            Plaintiffs,

    vs.

COUNTY OF SONOMA; SONOMA
COUNTY BOARD OF SUPERVISORS;
SONOMA COUNTY SHERIFF'S
DEPARTMENT; SONOMA COUNTY
SHERIFF MARK ESSICK, Does 1
through 50 inclusive,

            Defendants.
_____/

Case No. 3:21-cv-09499-SI

**DEFENDANTS' MOTION TO DISMISS
COMPLAINT**

Date:        March 4, 2022
Time:        11:00 a.m.
Location:    San Francisco Courthouse
             Courtroom 1 - 17th Floor
             450 Golden Gate Avenue

Hon. Susan Illston

BLUESTONE
FAIRCLOTH
OLSON

NO. 3:21-cv-09499: Defendants' Motion to Dismiss Complaint

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Marcotte Dies of Fentanyl Overdose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The County Provided Substance about Treatment Programs at
the MADF in Which Marcotte Participated . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The Sheriff's Department Invoked the Critical Incident Protocol . . . . . . . . . . . . . . 3

    D.    Michael Marcotte Commits Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    E.    Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Plaintiffs' Federal Claims Are All Based upon *Monell* Liability
and Fail to State <u>Facts</u> Sufficient to Sustain a Claim . . . . . . . . . . . . . . . . . . . . 5

        1.    First Cause of Action: Failure to Intervene . . . . . . . . . . . . . . . . . . . . 5

        2.    Second, Third and Fifth Causes of Action- *Monell* claims . . . . . . . . . . . . . 7

        3.    Fourth Cause of Action: Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    Plaintiffs Have Failed to State Facts to Support Their State Law Claims . . . . . . . . . 15

        1.    Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    Negligent Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . 16

        3.    Intentional Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . 18

    C.    Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

BLUESTONE
FAIRCLOTH
OLSON

**TABLE OF AUTHORITIES**

Page

<u>Cases</u>

*Anakin v. Contra Costa Reg'l Med. Ctr.*, No. 16-CV-00161-MEJ, 2016 WL 1059428,
at *3 (N.D. Cal. Mar. 17, 2016) .................................................... 10, 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 ................................................. 5, 16

*Bagley*, 2017 WL 344998, at *16 ...................................................... 9

*Bauer v. City of Pleasanton*, No. 3:19-CV-04593-LB, 2020 WL 1478328,
at *8 (N.D. Cal. Mar. 26, 2020) .................................................... 20

*Bd. of the Cnty. Comm'rs*, 520 U.S. at 404 ........................................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................ 4, 5

*Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ................. 7

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021) .................. 5

*Berkley v. Dowds*, 152 Cal. App. 4th 518, 530 (2007) ................................. 20

*Block v. Rutherford,* 468 U.S. 576, 588–89, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) ............ 7

*Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997) ................ 11

*Briggs v. Cnty. of Maricopa*, No. , 2020 WL 3440288, at *6 (D. Ariz. June 23, 2020) .......... 20

*Brouwer v. City of Manteca*, No. 107-CV-1362 AWI DLB, 2008 WL 2825099, at *3,
2008 U.S. Dist. LEXIS 75843, at *9 (E.D. Cal. July 18, 2008) .......................... 13

*Bull v. City and County of San Francisco*, 595 F.3d 964, 966 (9th Cir. 2010) ................ 7

*Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992) ............................... 17

*Burnett v. Short*, 441 F.2d 405, 406 (5th Cir.1971) .................................. 13

*Burns v. City of Concord*, No. C 14-00535 LB, 2014 WL 5794629, at *15 (N.D. Cal.
Nov. 6, 2014) .................................................. 11, 14, 18, 19, 20

*Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ........................... 14

*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679,
843 P.2d 624 .................................................................... 15

*Bruner v. Dunaway*, 684 F.2d 422, 426–27 (6th Cir.1982) .............................. 5

*City of Canton*, 489 U.S. at 385-86 .................................................. 10

*Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780,
799 (9th Cir. 2008) .............................................................. 13

BLUESTONE
FAIRCLOTH
OLSON

No. 3:21-cv-09499-SI: Defendants' Motion to Dismiss Complaint

Page

<u>Cases</u> (Cont'd)

*Christensen v. Superior Court*, 54 Cal.3d 868, 906 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cook v. Cnty. of Los Angeles*, No. 19-CV-2417-JVS-KLSX, 2021 WL 4353120, at *4 (C.D. Cal. July 28, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Copeland v. County of Alameda*, No. 12–cv–04286–JST, 2014 WL 1266198, at *3 . . . . . . . . 19, 20

*Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1014 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987) . . . . . . . . . . . . 14

*County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000), as amended (Oct. 31, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) . . . . . . . . . . . . . . . 6

*Dougherty*, 654 F.3d at 900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Eastburn v. Regional Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2002) . . . . . . . . . . . . . . . . . . . . . 16

*Eng v. Pac. Clinics*, No. 12-CV-10892-SVW-PJW, 2013 WL 12129611, at *4 (C.D. Cal. May 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Est. of Adomako v. City of Fremont*, No. 17-CV-06386-DMR, 2018 WL 2234179, at *4 (N.D. Cal. May 16, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ewing v. Cumberland Cty.*, 152 F. Supp. 3d 269, 303 (D.N.J. 2015) . . . . . . . . . . . . . . . . . . . . . . 10

*Galen v. County of L.A.*, 477 F.3d 652, 667 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Garcia v. County of Napa.*, No. 21-CV-03519-HSG, 2022 WL 110650, at *7 (N.D. Cal. Jan. 12, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990) . . . . . . . . . . . . . . . . . 5

*Gillette v. Delmore*, 979 F.2d 1342, 1534 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goodfellow v. Ahren*, No. 13-04726 RS, 2014 WL 1248238, at *9, 2014 U.S. Dist. LEXIS 42397, at *33 (N.D. Cal. Mar. 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

BLUESTONE
FAIRCLOTH
OLSON

Page

Cases (Cont'd)

*Hason v. City of Los Angeles*, No. 11-CV-5382-SVW (JPR), 2014 WL 12852497,
   at *2 (C.D. Cal. Aug. 7, 2014) ........................................ 9

*Herrera v. City of Sacramento*, No. 2:13-cv-00456-JAM-AC, 2013 WL 3992497,
   *2, 2013 U.S. Dist. LEXIS 109119, *6 (E.D. Cal. Aug. 1, 2013) ................. 13, 16

*Hudson v.Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ............. 7

*Huggins v. Longs Drug Stores California, Inc.,* 6 Cal.4th 124, 129 (1993) ............ 17

*Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) ........................... 12

*Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988) .......... 12

*Kelley v. Conco Companies*, 196 Cal.App. 4th 191, 215 (2011) ................... 19

*Kentucky v. Graham*, 473 U.S.159, 166 (1985) ............................. 13

*Kingsley v. Hendrickson*, 576 U.S. 389, 396, 135 S. Ct. 2466, 2472,
   192 L. Ed. 2d 416 (2015) ........................................... 6

*Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) ......... 8

*Kollin v. City of Tehachapi*, No. 18-CV-00617-LJO-JLT, 2018 WL 4057491,
   at *6 (E.D. Cal. Aug. 24, 2018) ...................................... 8

*Lawson v. Superior Court,* 180 Cal. App.4th 1372, 1383 (2010) ................. 15

*Lopez v. County of Los Angeles*, 2015 WL 3913263, at *12 (C.D. Cal. June 25, 2015) ....... 19

*Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal.1997) ....................... 13

*Luttrell v. Hart*, 2020 WL 5642613, at *7 (N.D. Cal. Sept. 22, 2020) ................ 15

*MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1109 (C.D. Cal. 2009) ..... 13, 14

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 590 (1989)............ 17

*Mendocino Envtl. Ctr.*, 192 F.3d at 1301 .................................. 14

*Mendy v. City of Fremont*, No. 13-CV-4180-MMC, 2014 WL 574599,
   at *3 (N.D. Cal. Feb. 12, 2014) ...................................... 9

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ...................... 6, 8, 9

*Moody v. California Dep't of Corr. & Rehab.*, 2021 WL 5864069,
   at *1 (S.D. Cal. Dec. 10, 2021) ...................................... 19, 20, 21

*Overton v. Bazzetta,* 539 U.S. 126, 134, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)............ 7

*Pleasant v. Cty. of Merced*, 669 F. App'x 388, (Mem)–389 (9th Cir. 2016) ............ 12

BLUESTONE
FAIRCLOTH
OLSON

No. 3:21-cv-09499-SI: Defendants' Motion to Dismiss Complaint

Page

Cases (Cont'd)

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Robertson v. Wegmann*, 436 U.S. 584, 590 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . 13

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sweiha v. Cnty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227,
    at *4 (N.D. Cal. Oct. 1, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Teter v. City of Newport Beach* 30 Cal.4th 446, 451 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thing v. La Chusa*, 48 Cal.3d 644, 647 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir.2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Turek v. Stanford Univ. Med. Ctr.*, 2013 WL 4866331, at *2 (N.D.Cal. Sept. 12, 2013) . . . . . . . . . 17

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott*,
    463 U.S. 825, 828–29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539,
    1541 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. City of Oakland*, 915 F. Supp. 1074, 1079 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . 20

*Woodrum v. Woodward County.*, 866 F.2d 1121, 1126 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 14

*Zelig v. County of Los Angeles,* 27 Cal. 4th 1112, 1127 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

BLUESTONE
FAIRCLOTH
OLSON

Page

Statutes

Fourteenth Amendment ........................................................ 5, 12, 14

42 U.S.C. § 1983 ........................................................... 12, 14, 20

42 U.S.C. § 1985 ............................................................... 12, 14

42 U.S.C. § 1988 ............................................................... 12, 20

Fed. Rule Civ. Proc. Rule 12(b)(6) ................................................ 4, 5

Federal Rule of Civil Procedure 8(a) ................................................. 4

California Constitution Article I, § 28 ............................................... 11

Cal. Civ. Code § 1714 ............................................................. 16

Cal. Civ. Proc. Code § 377.34 .................................................. 19, 20

Government Code § 815 ............................................................ 15

Government Code § 815.2 .......................................................... 15

Government Code § 844.6 ....................................................... 15, 16

BLUESTONE
FAIRCLOTH
OLSON

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE and notice is hereby given that on Friday, March 4, 2022, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, of the above entitled court located at 450 Golden Gate Avenue, San Francisco, California, Defendants will and do hereby move to dismiss the Complaint of Plaintiffs pursuant to Fed. R. Civ. Proc. 12(b)(6) (failure to state a claim upon which relief can be granted) on each and every cause of action, dismissal of Sheriff Essick, Sonoma County Sheriff's Department and Sonoma County Board of Supervisors, and survival damages claimed by Plaintiffs.

The motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the papers and pleadings on file herein, and on such further matters as the Court deems proper.

# I. FACTUAL BACKGROUND

## A.    Marcotte Dies of Fentanyl Overdose

At about 4:30 a.m. on October 29, 2020, correctional deputies at the County of Sonoma's Main Adult Detention Facility ("MADF") found inmate Tiffany Pimentel ("Pimentel") outside of her cell. She was in distress and the MADF staff called an ambulance. (Complaint, ¶ 22)  A short time later, correctional deputies found Pimentel's cell mate, Amber Marcotte ("Marcotte") in her cell, deceased. (Complaint, ¶ 22)  Approximately four hours after finding Ms. Marcotte in her cell, the Sonoma County Sheriff's Department requested the assistance of the Napa County Sheriff to conduct a coroner's investigation of the cause of death.

The Napa County Coroner found that Marcotte death was caused by "acute fentanyl intoxication."  The medical staff at the hospital where Pimentel was treated found she had also overdosed on fentanyl but survived. (Id., ¶ 22).  Deputies and investigators found no drugs or drug paraphernalia in Marcotte and Pimentel's cell or on their persons.

As of October 29, 2020, Marcotte had been in Jail since July 11, 2020, following an arrest for driving under the influence.   Pimentel had been incarcerated since September 2020, when her pretrial release was terminated by the Superior Court.  The cell Pimentel and Marcotte shared at the MADF, cell 18 in the "D Pod" on the second floor of the Jail, was locked at night and cannot be opened without the assistance of a guard.  Security cameras inside the pod would also capture anyone entering or leaving Ms. Marcotte's cell at any time.

Marcotte and Pimentel[1] would have required assistance to gain access to fentanyl inside the Jail.  On October 29, 2020, and for months prior, the Jail was closed to outside "visitors" because of the COVID-19 pandemic.  Neither Marcotte nor Pimentel had significant funds in their jail accounts at the time they acquired fentanyl inside the Jail.  The fentanyl that Marcotte overdosed on had to come from a source outside the interior of the MADF.

---

[1] Plaintiffs plead that Pimentel had multiple charges against her and that Pimentel refuses to discuss Marcotte's death. (Complaint, ¶ 50, 51)

**B.**     **The County Provided Substance about Treatment Programs at the MADF in Which Marcotte Participated**

Inside the MADF, where in 2020, approximately 40% of inmates suffered from either mental health or substance abuse issues.  According to the Sonoma County Mental Health Board, the Sonoma County detention facilities are often referred to as "the largest provider of mental health services in the county."  This includes substance abuse treatment.  Sonoma County employs an outside contractor to provide its mental health and substance abuse treatment in the MADF.  At the time of her death, Marcotte was participating in the substance abuse treatment programs available in the MADF.   The County and the Sheriff's Department were therefore aware that Marcotte, like many inmates in custody, had substance abuse issues.

For the public at large, Sonoma County has a growing problem with opioid abuse and addiction.  During the pandemic, annual opioid overdose deaths more than doubled according to a Sonoma County Coroner's report.

**C.**     **The Sheriff's Department Invoked the Critical Incident Protocol**

The Sonoma County Sheriff's Department has adopted a "Critical Incident Protocol" (the "Protocol") developed by the Sonoma County Chief's Association. (Complaint, Ex. A) The Protocol defines a critical incident as any incident involving "[f]atal injury while a person is in law enforcement custody which includes suicide and/or ingestion of toxic substances, or any unexplained death …" (Complaint, Ex. A at 3.)  When death by ingestion of a toxic substance occurs, Sheriff's Office Violent Crimes Unit will investigate. (Id.) The Sheriff's Office "may" request that another Sheriff's Office be the lead agency or assist in the investigation unless an Employee of the Sheriff's Office is involved in the death, and then the Sheriff is to refer the investigation to an outside agency.   For an in-custody death at the MADF, cases are rarely referred to an outside agency. (Id., Ex. A at 3-4)

In Marcotte's case, the Sonoma County conducted an investigation.   (Complaint, ¶ 40) Additionally, under the Protocol, the County is to advise the on-call Sonoma County District Attorney's Investigator of the fatality. (Complaint, ¶ 46)  The D.A. Investigator will determine if the

1  District Attorney's Office should assist with the investigation.  The D.A.'s office was aware of the

2  investigation and reviewed the Sheriff's Office investigation.   (Complaint, ¶ 46)

3         Additionally, an independent pathologist/Coroner's Office shall be requested to conduct

4  the Coroner's investigation. (Complaint, Ex. A, at  3)  The Napa Coroner's office performed the

5  coroner's investigation into Marcotte's death.  (Complaint, ¶ 22-23)

6  **D.      Michael Marcotte Commits Suicide**

7         In the morning of October 29, 2020, Michael Marcotte, father of Marcotte, learned of

8  Marcotte's passing.  (Complaint, ¶ 42) Later that afternoon, Michael Marcotte committed suicide by

9  jumping off the Carquinez Bridge in Vallejo, California.

10  **E.      Parties**

11         Plaintiff Michelle Saxton ("Saxton) is the guardian ad litem for Marcotte's minor daughter

12  M.M.  Plaintiff Michael Clark ("Clark") is the brother to Marcotte, son of Michael Marcotte and a

13  beneficiary of the Michael Marcotte Family Trust.  The Estate of Amber Marcotte is a party to this

14  action.  Amber Marcotte died intestate.  The Estate of Michael Marcotte is a party to this action.

15  Collectively these will be referred to as Plaintiffs.

16         Defendants include the County of Sonoma, the Sonoma County Board of Supervisors,

17  Sonoma County Sheriff's Office and Sonoma County Sheriff Mark Essick.  Plaintiffs' counsel has

18  clarified that Sheriff Mark Essick is sued only in his official capacity. Collectively these will be

19  referred to as Defendants.

20  ## II.  LEGAL ARGUMENT

21         Fed. Rule Civ. Proc. Rule 12(b)(6) provides that every defense to a claim for relief in any pleading

22  may be asserted by making a motion if there is a "failure to state a claim upon which relief can be

23  granted."  Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain

24  statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint

25  must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.

26  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

27         A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not

28  contain enough facts to state a claim to relief that is plausible on its face. See *Twombly,* 550 U.S. at 570.

BLUESTONE
FAIRCLOTH
OLSON

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plausible claim includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009))." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678. Plaintiffs have not pled facts sufficient to meet this standard and the motion should be granted.

## A. PLAINTIFFS' FEDERAL CLAIMS ARE ALL BASED UPON MONELL LIABILITY AND FAIL TO STATE <u>FACTS</u> SUFFICIENT TO SUSTAIN A CLAIM

### 1. First Cause of Action: Failure to Intervene

Plaintiffs' First Cause of Action asserts it is a "failure to intervene" cause of action against the County Defendants under the Fourteenth Amendment due process clause. (Complaint,¶ 58 ). An officer has "a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede. See *Bruner v. Dunaway*, 684 F.2d 422, 426–27 (6th Cir.1982) (holding that officers who were not present at the time of the alleged assault could not be held liable in a section 1983 action); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990) (granting arresting officers' motion for summary judgment because the officers had no "realistic opportunity" to prevent an attack committed by another officer)." *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000), as amended (Oct. 31, 2000).

Furthermore, under the Fourteenth Amendment's due process clause, the Defendant must have acted deliberately, "as we have stated, 'liability for negligently inflicted harm is categorically beneath the

1  threshold of constitutional due process.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct.
2  1708, 140 L.Ed.2d 1043 (1998) (emphasis added). See also *Daniels v. Williams*, 474 U.S. 327, 331, 106
3  S.Ct. 662, 88 L.Ed.2d 662 (1986) ("Historically, this guarantee of due process has been applied to
4  deliberate decisions of government officials to deprive a person of life, liberty, or property"). *Kingsley*
5  *v. Hendrickson*, 576 U.S. 389, 396, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015)

6      Here, Plaintiffs do not plead that the County Defendants knew of the existence of drugs given to
7  Marcotte and then had an opportunity to intervene.[1]   Plaintiffs have no facts to support a failure to
8  intervene claim.  Furthermore, Plaintiffs plead no more than a negligence claim that the "failures"
9  occurred and there are no facts to show deliberate interference. Plaintiffs have not, nor could they, claim
10  that the County Defendants do not engage in security measures at the MADF or that they do not monitor
11  the interior of the MADF: they simply claim that it was inadequate without factual support.

12      Plaintiffs claim that drugs made its way into the MADF, that many inmates use drugs like
13  Marcotte and, therefore, her death was caused by the County's failure to prevent drugs from getting inside
14  the MADF and/or failure to monitor the inside of the MADF. (Complaint, ¶ 58(a)&(d).)   Plaintiffs'
15  conclusionary statement that the County "failed to prevent" or "failed to monitor" are not facts at all and
16  are at best negligence allegations upon which section 1983 allegations cannot be based.

17      Plaintiffs also plead that the County Defendants failed to oversee investigations in the MADF and
18  that the County Defendants did not refer the Marcotte in-custody death investigation to outside agencies
19  when "possible" employees are involved. (Complaint, ¶ 58(b)&(c).)   Again, these are just recitations
20  of conclusionary statements unsupported by any facts.  In fact, Plaintiffs plead that, under the Protocol
21  for death by ingestion of toxic substances by someone in custody, the County is the agency that is to
22  conduct the investigation and involve the District Attorneys' Office. (Complaint, Ex. A [H(7)(a)].) This
23  is just what occurred in this case.  (Complaint, ¶ 46).

24      Plaintiffs allege that someone other than Marcotte and Pimental had to assist them in getting drugs
25  in the interior of the MADF and, therefore, it must be a County employee.  This too is conclusionary and
26  speculation.  It is no secret that thousands of citizens are booked into the MADF each year.  It is pure

---

[1] Nor can County liability be based upon *respondeat superior* liability under § 1983 for
conduct by a County employee. (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).)

1    speculation that an employee, as opposed to a non-employee, was involved in bringing the drugs into the

2    jail and, therefore, the County should have referred an investigation to an outside agency.   Drugs in

3    detention facilities have been commented by Courts going back to at least the 1970s:

> "A detention facility is a unique place fraught with serious security dangers.
> Smuggling of money, drugs, weapons, and other contraband is all too common an
> occurrence." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> Indeed, "attempts to introduce drugs and other contraband into [prison] premises ... is
> one of the most perplexing problems of prisons." *Hudson v. Palmer,* 468 U.S. 517, 527,
> 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see Overton v. Bazzetta,* 539 U.S. 126, 134,
> 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ("Drug smuggling and drug use in prison are
> intractable problems."); *Block v. Rutherford,* 468 U.S. 576, 588–89, 104 S.Ct. 3227, 82
> L.Ed.2d 438 (1984) ("We can take judicial notice that the unauthorized use of
> narcotics is a problem that plagues virtually every penal and detention center in the
> country."). San Francisco's six county jails are no exception: They struggle with a
> serious, ongoing problem of drugs, weapons, and other contraband being smuggled
> into jail facilities.

11    *Bull v. City and County of San Francisco*, 595 F.3d 964, 966 (9th Cir. 2010)

12    Plaintiffs' formalistic pleading could be plead for any drug event in any detention facility across the

13    nation.   Without any facts to support that an employee caused the drugs to be given to Marcotte, there

14    is no basis in their claim that an outside agency should have investigated this incident.

15         To the extent that Plaintiffs attempt to make a *Monell* claim, this is discussed below.

16         **2.     Second, Third and Fifth Causes of Action- *Monell* claims**

17         It is difficult to distinguish the Second, Third and Fifth Causes of Action as they are based

18    upon alleged policies or lack of policies of the County.   These claims can be broken up into two

19    categorizes: 1) failure to ensure inmate safety and 2) failure to adequately investigate criminal

20    conduct at the MADF.

21         Plaintiffs plead safety issues in various forms: failure to prevent drugs from coming into the

22    MADF, failure to securely monitor the interior of the MADF; failure to train regarding recognizing

23    and responding to drug trafficking; failure to have a policy to reduce inmate injury due to drugs;

24    failure to ensure safety of inmates and failure to train on dangerous situations.  (Complaint, ¶ 65(a)-(

25    c); 71(a)-(d); 85(a)-( c).)  Plaintiffs also plead failure to investigate: failure to sufficiently oversee

26    investigations; failure to conduct a proper investigation.  (Complaint, ¶ 65(d); 85(d).)    None of these

27    allegations are sufficient to maintain an action against the County Defendants.

28         Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging

BLUESTONE
FAIRCLOTH
OLSON

1  and showing that a city or county employee committed the alleged constitutional violation under a

2  formal governmental policy or longstanding practice or custom that is the customary operating

3  procedure of the local government entity; (2) by establishing that the individual who committed the

4  constitutional tort was an official with final policymaking authority, and that the challenged action

5  itself was an act of official governmental policy which was the result of a deliberate choice made

6  from among various alternatives; or (3) by proving that an official with final policymaking authority

7  either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional

8  decision or action and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1534 (9th Cir. 1992)

9      In addition, to "sufficiently plead a *Monell* claim, a plaintiff must show that the government

10  'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional

11  violation he suffered.' *Galen v. County of L.A.*, 477 F.3d 652, 667 (9th Cir.2007) (quoting *Monell*,

12  436 U.S. at 694-95); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) ("To meet this

13  requirement, the plaintiff must show both causation-in-fact and proximate causation."); see also *Bd.*

14  *of the Cnty. Comm'rs*, 520 U.S. at 404 ("[A] plaintiff ... must demonstrate a direct causal link between

15  the municipal action and the deprivation of federal rights.") 'This inquiry has been described as a

16  difficult one.' See *Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) (citing

17  *City of Canton*, 489 U.S. at 385-86)." *Garcia v. County of Napa.*, No. 21-CV-03519-HSG, 2022 WL

18  110650, at *7 (N.D. Cal. Jan. 12, 2022)

19      Aside from bald accusations and conclusions, Plaintiffs fail to plead facts to support that an

20  actual unconstitutional policy or custom existed and that such unconditional policy or custom was the

21  proximate cause of Marcotte's death.  "Courts have found vague assertions of municipal policies to be

22  insufficient. See *Sweiha v. Cnty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *4 (N.D.

23  Cal. Oct. 1, 2019) (dismissing *Monell* "longstanding practice or custom" claim where complaint's

24  allegations of six incidents had "markedly different facts" and "d[id] not show a custom that is so

25  persistent and widespread that it constitutes a permanent and well settled city policy" (cleaned up));

26  *Kollin v. City of Tehachapi*, No. 18-CV-00617-LJO-JLT, 2018 WL 4057491, at *6 (E.D. Cal. Aug.

27  24, 2018) (dismissing *Monell* "practice or procedure" claim where complaint "begins from the

28  premise that the officer defendants acted unconstitutionally, then asserts various theories of *Monell*

1 liability for why the allegedly unconstitutional acts may have taken place, but without facts to support

2 those theories"); see also *Dougherty*, 654 F.3d at 900 ("Here, Dougherty's *Monell* claim[ ] lack[s] any

3 factual allegations that would separate [it] from the 'formulaic recitation of a cause of action's

4 elements' deemed insufficient by *Twombly*.")." *Garcia v. County of Napa.*, *supra*, at \*4-6 [rejecting

5 as insufficient allegations that Napa County has the custom, policy, or practice (1) "[t]o use or tolerate

6 the use of unlawful deadly force;" (2) "[t]o cover-up violations of constitutional rights;" and (3) "[t]o

7 allow, tolerate, and/or encourage a 'code of silence' among law enforcement officers and Sheriff's

8 Office personnel."]; relying on *Mendy v. City of Fremont*, No. 13-CV-4180-MMC, 2014 WL 574599,

9 at \*3 (N.D. Cal. Feb. 12, 2014) (dismissing *Monell* claim based on unsupported allegation of an

10 "informal custom or policy that tolerates and promotes the continued use of excessive force and cruel

11 and unusual punishment against and violation of civil rights of citizens by City police officers in the

12 manner alleged [elsewhere in the complaint]"); *Bagley*, 2017 WL 344998, at \*16 ("[Allegations] that

13 Sunnyvale has a policy to cover up unconstitutional actions ... are vague and are insufficiently

14 detailed to sufficiently allege the policy at issue"); *Hason v. City of Los Angeles*, No. 11-CV-5382-

15 SVW (JPR), 2014 WL 12852497, at \*2 (C.D. Cal. Aug. 7, 2014) (granting motion to dismiss *Monell*

16 claim against city based on "vague allegations of a department-wide 'code of silence' "; collecting

17 cases); *Eng v. Pac. Clinics*, No. 12-CV-10892-SVW-PJW, 2013 WL 12129611, at \*4 (C.D. Cal. May

18 17, 2013) ("Plaintiffs' naked allegation of a department-wide 'code of silence,' standing alone, is

19 insufficient to support a *Monell* claim against the County or the Sheriff's Department.").

20   Here, Plaintiffs fail to identify a single "actual" policy or how that actual policy was the

21 "moving force" behind the constitutional violation.   Essentially, Plaintiffs have stated that drugs got

22 into the MADF and, therefore, the security was lacking.   No court known to Defendants have made

23 every detention facility in the United States liable for an injury caused by inmate drug use based upon

24 these bare allegations.   This would reduce a section 1983 claim to a general negligence standard

25 which has specifically been rejected by the Supreme Court.

26   Plaintiffs have likewise failed to state facts to support a "custom."   "Liability for improper

27 custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

28 sufficient duration, frequency and consistency that the conduct has become a traditional method of

BLUESTONE
FAIRCLOTH
OLSON

NO. 3:21-cv-09499: Defendants' Motion to Dismiss Complaint

1  carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).   Plaintiffs allege several

2  security related policies and investigation policies but never allege a longstanding unconstitutional

3  policy supported  by facts to show that County Defendants were deliberately indifferent to drug

4  smuggling or failed to investigate such crimes at the MADF.   Plaintiffs fail to plausibly allege that

5  the customs, policies, and practices are "founded upon practices of sufficient duration, frequency and

6  consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99

7  F.3d at 918. Accordingly, Plaintiffs fail to adequately allege a "custom" or "practice."

8       Not only do Plaintiffs fail to identify specific deficient training, but Plaintiffs must show a

9  causal link: "the identified deficiency in a city's training program must be closely related to the

10  ultimate injury." *Canton*, 489 U.S. at 391, 109 S.Ct. 1197; see also *Thomas v. Cumberland Cnty.*, 749

11  F.3d 217, 222 (3d Cir.2014).  *Ewing v. Cumberland Cty.*, 152 F. Supp. 3d 269, 303 (D.N.J. 2015).

12  Causation is more than "but for" causation but also proximate causation.  "Without facts alleging a

13  'direct causal link' between a policy or custom and the alleged constitutional violation, a plaintiff

14  cannot state a Monell claim." *Anakin v. Contra Costa Reg'l Med. Ctr.*, No. 16-CV-00161-MEJ, 2016

15  WL 1059428, at *3 (N.D. Cal. Mar. 17, 2016) (*quoting Bd. of Cnty. Comm'rs*, 520 U.S. at 404)

16  ("Plaintiff has not identified or alleged a policy, practice or custom that may have caused a

17  deprivation of his rights, and he fails to allege that such practice was the 'moving force' behind his

18  alleged injury"); see also *Dougherty*, 654 F.3d at 900-01 ("The Complaint lacked any factual

19  allegations regarding key elements of the *Monell* claims, or, more specifically, any facts

20  demonstrating that his constitutional deprivation was the result of a custom or practice of the City of

21  Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation.");

22  *Est. of Adomako v. City of Fremont*, No. 17-CV-06386-DMR, 2018 WL 2234179, at *4 (N.D. Cal.

23  May 16, 2018) ("[T]he FAC states no non-conclusory facts as to Fremont's police training policy or

24  program and fails to plausibly allege any facts to support a causal link between the training program

25  and the Estate's excessive force claim."); *Cook v. Cnty. of Los Angeles*, No. 19-CV-2417-JVS-KLSX,

26  2021 WL 4353120, at *4 (C.D. Cal. July 28, 2021) ("[T]he TAC sets forth the aforementioned

27  conclusory and vague statements, which lack sufficient factual content regarding the specific nature

28  and deficiencies of the alleged policy and fail to connect the alleged policy as the cause of the

purported harm.").*" Garcia v. County of Napa., supra*, at \*7.

In addition to the lack of facts to support the policies, customs and practices, Plaintiffs have failed to plead facts to show deliberate indifference. *County of Sacramento v. Lewis, supra*, 523 U.S. at 849. " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997) ["Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."]; see also *Burns v. City of Concord*, No. C 14-00535 LB, 2014 WL 5794629, at \*15 (N.D. Cal. Nov. 6, 2014).   Plaintiffs have not stated any factual basis as to deficient training, security or monitoring in a particular respect that demonstrates such as a custom or practice that shows deliberate indifference or how this was the cause of Marcotte's death.

Plaintiffs also plead a ratification claim but fail to identify what was ratified and by whom, under what circumstances or how this was the proximate cause of Marcotte's death. ( Complaint, ¶ 65) This allegation is too vague to even respond to and should be dismissed. See *Burns v. City of Concord, supra*, 2014 WL 5794629, at \*15.

Similarly, Plaintiffs allege that the County Defendants did not follow the Protocol or conduct proper investigations.   First, as stated above, the Protocol was followed.   Second, even if it was not, there are no factual allegations of what constitutional violation occurred by not following the Protocol or, specifically, what is the factual basis for finding that the lack of following the Protocol by conducting an "internal" investigation was the proximate cause of Marcotte's death.

Plaintiffs further claim that the County D.A. did not follow Marcy's law, California Constitution Article I, § 28, section(b). (Complaint, ¶ 55)  A section 1983 claim is not applicable to assert a non-federal right including the "'Victims Bill of Rights,' Cal. Const., Art. I, Sec. 28. [citation]" *Burns, supra*,  2014 WL 5794629, at \*13.  Furthermore, Article I, Section 28(c)(2), however, provides that "[t]his section does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the

1  State or of any of its political subdivisions, or any officer or employee of the court." (Id., at *20)

2  ### 3.   Fourth Cause of Action: Conspiracy

3
4  Plaintiffs claim under 42 U.S.C. §§ 1983, 1985 and 1988, Defendants conspired to violate

5  Marcotte's 14th Amendment rights under the Fourth, Eighth and Fourteenth Amendments.

6  (Complaint, ¶ 78)  It is unclear what Plaintiffs' Fourth and Eighth Amendment allegations are as they

7  are silent on what the basis for these claims are.   Nevertheless, Plaintiffs fail to allege facts to support

8  a claim of conspiracy.

9  A §1985(3) conspiracy claim requires allegations of: 1) a conspiracy; 2) for the purpose of

10  depriving a person or class of equal protection or privileges and immunities; 3) an act in furtherance

11  thereof; and 4) injury or deprivation of rights. *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971);

12  *United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29

13  (1983). Additionally, "[t]he language requiring intent to deprive of equal protection, or equal

14  privileges and immunities, means that there must be some racial, or perhaps otherwise class-based,

15  invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102, 91 S.Ct.

16  1790 (footnote omitted). In the Ninth Circuit, Section 1985(3) extends "beyond race only when the

17  class in question can show that there has been a governmental determination that its members require

18  and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978

19  F.2d 1529, 1536 (9th Cir.1992) (citations and internal quotations omitted).  See *Pleasant v. Cty. of*

20  *Merced*, 669 F. App'x 388, (Mem)–389 (9th Cir. 2016) [pretrial detainee based claim does not meet

21  the class based requirement of §1985]; *Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002)

22  (indigent prisoners are not a suspect class).

23  Plaintiffs are not a suspect class, nor was Marcotte and, therefore, Plaintiffs cannot assert a

24  conspiracy claim under §1983.   Furthermore, Plaintiffs have failed to plead facts to support a

25  conspiracy claim. See *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988)

26  ("A claim under this section must allege facts to support the allegation that defendants conspired

27  together. A mere allegation of conspiracy without factual specificity is insufficient." (citing *Jaco v.*

28

BLUESTONE
FAIRCLOTH
OLSON

1   *Bloechle*, 739 F.2d 239, 245 (6th Cir.1984); *Burnett v. Short*, 441 F.2d 405, 406 (5th Cir.1971)
2   [allegations devoid of facts does not support a conspiracy claim]).

3       Plaintiffs' claims do not put Defendants on notice of who entered the alleged conspiracy,
4   when, what acts were committed in furtherance of the conspiracy, and how those acts harmed
5   Plaintiffs. See *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir.1990) ("A mere allegation
6   of conspiracy without factual specificity is insufficient to support a claim.")
7
8       This is especially true here where there is only one true Defendant who could not conspire
9   with itself.   Sheriff Essick is sued in his official capacity. An official capacity action is not against the
10  public employee personally, "for the real party in interest is the entity." *Kentucky v. Graham*, 473
11  U.S.159, 166 (1985)  "An official capacity suit against a municipal officer is equivalent to a suit
12  against the entity." *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780,
13  799 (9th Cir. 2008). "For this reason, when both an officer and the local government entity are named
14  in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and
15  may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D.Cal.1997); see also *MacEachern v.
16  City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1109 (C.D. Cal. 2009).  Sheriff Essick should be
17  dismissed from this lawsuit.

18      Additionally, the Sonoma County Sheriff's Department and the Sonoma County Board of
19  Supervisors are all agents of the County of Sonoma, the real defendant in interest in this case.  The
20  Sheriff's Department and Board are not separate entities and should be dismissed. See *Goodfellow v.
21  Ahren*, No. 13-04726 RS, 2014 WL 1248238, at *9, 2014 U.S. Dist. LEXIS 42397, at *33 (N.D. Cal.
22  Mar. 26, 2014) (holding that claims against a city were "duplicative" of claims against its police
23  department and construing claims against the police department as claims against the city); *Herrera v.
24  City of Sacramento*, No. 2:13-cv-00456-JAM-AC, 2013 WL 3992497, *2, 2013 U.S. Dist. LEXIS
25  109119, *6 (E.D. Cal. Aug. 1, 2013) ("Because the Sacramento Police Department is a department of
26  the City, it is redundant to name both."); *Brouwer v. City of Manteca*, No. 107-CV-1362 AWI DLB,
27  2008 WL 2825099, at *3, 2008 U.S. Dist. LEXIS 75843, at *9 (E.D. Cal. July 18, 2008) ("Because
28  Defendant Manteca Police Department is a subdivision of Defendant City of Manteca, it is an

1    unnecessary duplicative Defendant, and it will be dismissed."). There is but one Defendant in this

2    lawsuit who cannot have conspired with itself.   Having no facts to support any conspiracy, this claim

3    should be dismissed.

4          Plaintiffs' claim for conspiracy under §1983 suffers from the same pleading problems as the

5    claim under §1985. "To establish liability for a conspiracy in a §1983 case, a plaintiff must

6    'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights."

7    *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr.*,

8    192 F.3d at 1301).   Plaintiffs "must state specific facts to support the existence of the claimed

9    conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of*

10   *Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); see also *MacEachern v. City of*

11   *Manhattan Beach*, 623 F.Supp.2d 1092, 1110 (C.D.Cal.2009). "To be liable, each participant in the

12   conspiracy need not know the exact details of the plan, but each participant must at least share the

13   common objective of the conspiracy." *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge*

14   *Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)) (quotation marks omitted). In addition, a

15   plaintiff must show that an "actual deprivation of his constitutional rights resulted from the alleged

16   conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006) (quoting *Woodrum v. Woodward*

17   *County.*, 866 F.2d 1121, 1126 (9th Cir. 1989)) (quotation marks omitted).

18

19         Plaintiffs have not alleged any facts to show the members of the conspiracy, facts to support

20   the conspiracy, facts to support an unconstitutional conduct, or a proximate causation that the

21   conspiracy deprived Plaintiffs or Marcotte of due process under the 14th Amendment.   Here,

22   Plaintiffs simply recite that Defendant has a duty to keep Marcotte safe, was aware narcotics are

23   smuggled into the MADF, collaborated to "refuse to protect" Marcotte, some unknown Defendants

24   agreed to take this course of action and that such deliberately indifferent conduct proximately caused

25   injury to Plaintiffs and Marcotte. (Complaint, ¶70)   There are simply no facts to support any of these

26   conclusionary allegations. See *Burns v. City of Concord*, supra,  2014 WL 5794629, at *8–9

27   [conclusionary conspiracy allegations not enough to sustain a claim].

28         As Plaintiffs have failed to support their Federal claims with facts, the Court should dismiss

1  all claims and dismiss Sheriff Essick, the Sheriff's Department and the Board of Supervisors as well.

2  **B.      Plaintiffs Have Failed to State Facts to Support Their State Law Claims**

3          The Tort Claims Act provides that except as otherwise provided by statute,"'[a] public entity

4  is not liable for an injury." (Gov.Code, § 815.)  "[T]he intent of the [Tort Claims Act] is not to expand

5  the rights of plaintiffs in suits against governmental entities, but to confine potential governmental

6  liability to rigidly delineated circumstances...." ' (*Brown v. Poway Unified School Dist.* (1993) 4

7  Cal.4th 820, 829, 15 Cal.Rptr.2d 679, 843 P.2d 624.)." *Teter v. City of Newport Beach*, 30 Cal. 4th

8  446, 451 (2003).

9

10         Defendants assert the immunity under Government Code section 844.6, subdivision (a)(2)

11 (hereafter Government Code section 844.6(a)(2))[1]. Government Code section 844.6(a)(2), subject to

12 stated exceptions, provides that a public entity is not liable for "[a]n injury to any prisoner." *Teter v.*

13 *City of Newport Beach*, *supra*,  30 Cal. 4th at 448.

14         Plaintiffs cannot rely on vicarious liability to plead around the immunity provisions of

15 Government Code section 844.6(a)(2).  "Although a public entity may be vicariously liable for the

16 acts and omissions of its employees (Cal. Gov't. Code § 815.2), that rule does not apply in the case of

17 injuries to prisoners." *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383 (2010);  see also

18 *Luttrell v. Hart*, 2020 WL 5642613, at *7 (N.D. Cal. Sept. 22, 2020).

19         As the County is immune from liability for any injury to Marcotte as she was in custody on

20 October 29, 2020, all state law claims should be dismissed.

21

22     **1.      Negligence**

23         Plaintiffs allege that Marcotte obtained fentanyl through an employee or County contractor.

24 ─────────────────

25 [1]  Government Code § 844.6(a), titled "Injuries by and to prisoners" states that "(a)
   Notwithstanding any other provision of this part, except as provided in this section and in

26 Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part
   3 of the Penal Code, a public entity is not liable for:

27 (1) An injury proximately caused by any prisoner.

28 (2) An injury to any prisoner.

BLUESTONE
FAIRCLOTH
OLSON

1

(Complaint, ¶ 90)   Plaintiffs then allege that Defendants had a duty to "act reasonably" to prevent harm to Marcotte and breached that duty by not acting reasonably in relation to Marcotte's health and claims damage to each Plaintiff. (Id., ¶ 91-94.)  First, to the extent that Plaintiffs seek a direct action against the County, their claim cannot proceed as public entities cannot be held directly liable unless a specific statutory basis exists. See *Herrera v. City of Sacramento*, 2:13–CV–00456 JAM–AC, 2013 WL 3992497, at *7 (E.D.Cal. Aug. 2, 2013) (citing *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1127 (2002)) ("there is a clear distinction between holding a public entity vicariously liable for the acts of their employees and holding it directly liable"). "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care...." *Herrera*, 2013 WL 3992497, at *7 (quoting *Eastburn v. Regional Fire Prot. Auth.*, 31 Cal.4th 1175, 1183 (2003)).

Here, Plaintiffs do not cite a specific statute that provides liability against a public entity. The only citation is to Civil Code 1714 [general negligence statute] and Government Code §844.6(d) [discussed above].   Accordingly, a direct action against the County is not allowed as Plaintiffs have not identified a statute that allows liability against a public entity.

Second, consistent with the pleadings throughout the complaint, there are only recitations of elements of the claim of negligence and there are no facts to support the claim.  A pleading requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678.   The claim should be dismissed.

Finally, Defendants did not owe any duty to the Plaintiffs nor is any such duty plead under the sixth cause of action for negligence.

### 2.    Negligent Infliction of Emotional Distress

Plaintiffs allege that Defendants had a duty to avoid risk of physical harm to Michael Marcotte, did not act reasonably towards Michael Marcotte and were the proximate cause of injuries to Michael Marcotte.  (Complaint, ¶¶ 96-97)  Plaintiffs further allege that Defendants were negligent "in relation to Decedent that as a direct and proximate result thereof Mr. Marcotte was caused to and

BLUESTONE
FAIRCLOTH
OLSON

did suffer severe emotional distress as a direct result of the loss of his daugher, culminating in his own death." (Complaint, ¶ 99)

Negligent infliction of emotional distress is a form of the tort of negligence. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993). Accordingly, to establish a claim for negligent infliction of emotional distress, plaintiff must allege each of the following elements of negligence: (1) defendant engaged in negligent conduct involving usual issues of duty and breach, (2) plaintiff suffered serious emotional distress, and (3) defendant's conduct was a substantial factor in causing the emotional distress suffered by plaintiff. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992). A duty to the plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 590 (1989)). The California Supreme Court has made clear that there is no duty to avoid negligently causing emotional distress to another. *Id.* at 984.

California courts recognize two categories of liability for negligent infliction of emotional distress: "bystander" liability and "direct victim" liability. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992). In bystander actions, a plaintiff may recover if she "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim, and, (3) as a result, suffers emotional distress beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal.3d 644, 647 (1989). Plaintiffs do not contend that they are bystanders to Defendants' alleged negligence.

To assert a direct victim liability, this requires evidence of a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between" the parties. *Marlene*, 48 Cal.3d at 590; *Turek v. Stanford Univ. Med. Ctr.*, 2013 WL 4866331, at *2 (N.D.Cal. Sept. 12, 2013). A duty to the plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583,

BLUESTONE
FAIRCLOTH
OLSON

590 (1989)). The California Supreme Court has made clear that there is no duty to avoid negligently causing emotional distress to another. Id. at 984.

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

Id. at 985. "Therefore, a plaintiff must either allege a duty owed the plaintiff regarding his emotional condition or allege that his emotional distress arises out of defendant's breach of some other legal duty. [citation]." Burns v. City of Concord, supra, 2014 WL 5794629, at *18–19 (N.D. Cal. Nov. 6, 2014)

Plaintiffs have not shown that Defendants owed the Plaintiffs in this action a duty at all, or had a special relationship with the Plaintiffs or one that is imposed by law as to the Plaintiffs. Instead, Plaintiffs allege that Defendants were "so" negligent in relation to Marcotte that this caused emotional distress to Mr. Marcotte who then committed suicide.  Plaintiffs do not even try to allege that Defendants owed them a duty, but that their emotional distress and Mr. Marcotte's suicide was proximately caused by a breach of duty to Marcotte.   That is not the law of negligent infliction of emotional distress.

Again, like the claim for negligence, Plaintiffs have plead only conclusionary statements and not facts to support their claim.  They have also failed to point to a specific statute upon which to base liability against the County.   This claim should be dismissed as well.

### 3.      Intentional Infliction of Emotional Distress

Plaintiffs allege that Defendants had a duty to avoid risk of physical harm to Marcotte and that Defendants acted outrageously with reckless disregard to the probability that Plaintiffs would suffer emotional distress.  (Complaint, ¶ 104-105).   Each Plaintiff claims damages, including for Mr. Marcotte's suicide.  (Id., ¶ 106-107)

"A cause of action for intentional infliction of emotional distress exists when there is (1)

extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Companies*, 196 Cal.App. 4th 191, 215 (2011). " 'A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community.' *Id.* (internal quotation marks omitted)." *Burns v. City of Concord*, 2014 WL 5794629, at *17. To succeed on this claim, Plaintiffs would have to allege that Defendants directed their conduct at them and no such allegation was made.

In *Burns v. City of Concord, supra*, the Court dismissed the intentional infliction of emotional distress claims against the parents of a man shot and killed by law enforcement. The Court found that the parents' claim failed as the defendants did not direct their conduct at either of them. *Burns v. City of Concord*, at *17; citing *Copeland v. County of Alameda*, No. 12–cv–04286–JST, 2014 WL 1266198, at *3; *Christensen v. Superior Court*, 54 Cal.3d 868, 906 (1991) (holding that plaintiffs lacked "standing to sue for intentional infliction of emotional distress" because they "have not alleged that the conduct of any of the defendants was directed primarily at them, was calculated to cause them severe emotional distress, or was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury")]; see also *Lopez v. County of Los Angeles*, 2015 WL 3913263, at *12 (C.D. Cal. June 25, 2015)[ dismissing intentional infliction claims for same reason].)

As stated above, Plaintiffs have plead only conclusory statements and not facts to support their claim. They have also failed to point to a specific statute upon which to base liability against the County. This claim should be dismissed as well.

**C.    Damages**

Under California law, common-law claims for intentional infliction of emotional distress are extinguished under California's survival statute as well as claims for emotional distress damages. See Cal. Civ. Proc. Code § 377.34 ("In an action ... by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable ... do not include damages for pain, suffering, or disfigurement."). *Moody v. California Dep't of Corr. & Rehab.*, 2021 WL

1  5864069, at *1 (S.D. Cal. Dec. 10, 2021).

2  The question presented is whether § 377.34 bars the pain-and-suffering damages alleged in

3  federal civil-rights action under 42 U.S.C. § 1983.  Such federal claims are generally governed by

4  state law unless doing so would be "inconsistent with the Constitution and laws of the United States."

5  42 U.S.C. § 1988(a).  *Moody v. California Dep't of Corr. & Rehab., supra* at *1.  There is a split in

6  authority among the District Courts in California.  See *Burns, supra*, 2014 WL 5794629 at *17;

7  *Copeland v. County of Alameda*, 2014 WL 1266198, at *3 (N.D. Cal. March 21, 2014) (citing *Berkley*

8  *v. Dowds*, 152 Cal. App. 4th 518, 530 (2007)); *Bauer v. City of Pleasanton*, No. 3:19-CV-04593-LB,

9  2020 WL 1478328, at *8 (N.D. Cal. Mar. 26, 2020), on the one hand, and *Williams v. City of*

10 *Oakland*, 915 F. Supp. 1074, 1079 (N.D. Cal. 1996); *Cotton ex rel. McClure v. City of Eureka, Cal.*,

11 860 F. Supp. 2d 999, 1014 (N.D. Cal. 2012); *Briggs v. Cnty. of Maricopa*, No. , 2020 WL 3440288, at

12 *6 (D. Ariz. June 23, 2020) on the other hand.

13 The *Moody* court's analysis includes examining the United States Supreme Court decision in

14 *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978).  The *Moody* court explained:

16 "In *Robertson*, the Supreme Court considered the case of a civil-rights plaintiff who
17 died of unrelated causes during the litigation, triggering a Louisiana survival statute
   that completely precluded his § 1983 claim. See 436 U.S. at 590-93. The Court
18 concluded that this survival statute did not conflict with § 1983's twin goals. First, it
   held that the "goal of compensating those injured by a deprivation of rights provides
19 no basis for requiring compensation of one who is merely suing as the executor of the
   deceased's estate." Id. at 592. In a similar vein, the Court rejected any tension with the
20 deterrence rationale: "A state official contemplating illegal activity must always be
   prepared to face the prospect of a § 1983 action being filed against him. In light of this
21 prospect, even an official aware of the intricacies of Louisiana survivorship law would
   hardly be influenced in his behavior by its provisions." Id. So, "the Louisiana
22 survivorship provisions" could not be "deemed 'inconsistent with the Constitution and
   laws of the United States.' " Id. at 593 (quoting 42 U.S.C. § 1988)."

23 *Moody v. California Dep't of Corr. & Rehab., supra*, at *1.

24 As the Supreme Court found nothing inconsistent with denying altogether a right of action

25 under the State survivor claim, denying a damage remedy would also not be inconsistent under a

26 §1983 claim based upon state law.  "Because California's survival statute is not inconsistent with §

27 1983's underlying policy goals in these circumstances, this Court must apply that survival statute's bar

28

BLUESTONE
FAIRCLOTH
OLSON

1   to recovering 'damages for pain, suffering, or disfigurement.'" *Moody v. California Dep't of Corr. &*
2   *Rehab., supra.* at *2.

3      Accordingly, California's survivor statute should apply and bar all claims for pain, suffering,
4   or disfigurement in a survivor action such as the one brought by Plaintiffs.

5      Finally, the Estate of Michael Marcotte appears to be a Family Trust and there is no
6   affirmative pleading that Michael Clark is a trustee or otherwise authorized to assert a claim on behalf
7
8   of the Trust which is a separate entity.

9                    **III.   CONCLUSION**

10      For the above stated reasons, Defendants request the Court to dismiss the Complaint in its
11   entirety.

12   DATED:       January 19, 2022            BLUESTONE FAIRCLOTH & OLSON, LLP
13
14
15
16                                  By:    */s/ Marshall E. Bluestone*
17                                         Attorneys for County of Sonoma; Sonoma
                                           County Board of Supervisors; Sonoma County
18                                         Sheriff's Department; Sonoma County Sheriff
                                           Mark Essick
19
20
21
22
23
24
25
26
27
28

BLUESTONE
FAIRCLOTH
OLSON

## CERTIFICATE OF SERVICE

I am employed in Sonoma County, California.  I am over the age of 18 years and not a party to the within action.  My business address is 1825 Fourth Street, Santa Rosa, CA 95404.

On **January 19, 2022**, I served the following document(s):

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

by placing a true copy thereof enclosed is a sealed envelope and/or served in the manner described below and addressed to:

**Attorney for Plaintiffs**
Lyn R. Agre
Glenn Agre Bergman & Fuentes, LLP
44 New Montgomery St., 41st Floor
San Francisco, CA 94104
lagre@glennagre.com

Elizabeth Grossman
Law Offices of Elizabeth Grossman
1010 Grayson Street
Berkeley, CA 94710
office@elizabethgrossmanlaw.com


\_\_\_     **BY U.S. MAIL:**  I caused such envelope to be deposited in the mail by placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.  The name and address of each person/firm to whom I mailed the documents is listed above.

\_\_\_     **BY OVERNIGHT COURIER SERVICE:**  I caused such envelope to be delivered via overnight courier services to the addressee(s) designated above.

XX     **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direct this service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on **January 19, 2022**, at Santa Rosa, California.

*Emilee Paoli*

Emilee Paoli