1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELLE SAXTON, *et al.*,

          Plaintiffs,

    v.

COUNTY OF SONOMA, *et al.*,

          Defendants.

Case No. 21-cv-09499-SI

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FIRST
AMENDED COMPLAINT AND
GRANTING LEAVE TO AMEND**

Re: Dkt. No. 19

On February 22, 2022, defendants County of Sonoma, Sonoma County Board of Supervisors, Sonoma County Sheriff's Department, Sonoma County Sheriff Mark Essick, and individual officers Does 1-50, filed the instant motion to dismiss the first amended complaint ("FAC"). Dkt. No. 19 at 8.[1]  Having reviewed the parties' submissions, the Court found this matter appropriate for resolution without oral argument and VACATED the April 22, 2022 hearing pursuant to Local Rule 7-1(b).  For the reasons stated below, defendants' motion to dismiss is GRANTED.  Plaintiffs may file an amended complaint by **May 13, 2022**.

**BACKGROUND**

Amber Marcotte was arrested for driving under the influence and was held in custody at the Sonoma County Main Adult Detention Facility ("MADF") starting on July 11, 2020. First Amended Compl. ¶ 25 ("FAC") (Dkt. No. 17).  On the morning of October 29, 2020, Ms. Marcotte died of a fentanyl overdose in her cell at the MADF. *Id.* ¶ 20.  At roughly 4:30 a.m., guards found Ms. Marcotte's cellmate, Tiffany Pimentel, outside of the cell, also overdosing on fentanyl. *Id.* ¶ 22.

---

[1] For ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

United States District Court
Northern District of California

1  "[I]nvestigators found no drugs or drug paraphernalia in their cell or on their persons." *Id.* ¶ 24.

2  Their cell "was locked at night and cannot be opened without the assistance of a guard.  Security

3  cameras inside the pod would also capture anyone entering or leaving Ms. Marcotte's cell at any

4  time." *Id.* ¶ 26.

5  Just prior to her death, Ms. Marcotte was participating in the substance abuse treatment

6  programs available at the MADF. *Id.* ¶ 34.  "Neither Ms. Marcotte nor Ms. Pimentel had significant

7  funds in their jail accounts at the time they acquired fentanyl inside the Jail." *Id.* ¶ 28.  On the same

8  day, October 29, 2020, the Sheriff's Department "called and informed Ms. Marcotte's father,

9  Michael Marcotte, that his daughter had died in the Jail.  Later that day, Mr. Marcotte committed

10  suicide by jumping off the Carquinez Bridge in Vallejo, California." *Id.* ¶ 52.

11  "In the several years preceding Ms. Marcotte's death, there were numerous incidents of

12  narcotics possession inside jail facilities operated by Sonoma County and the Sonoma County

13  Sheriff's Department." *Id.* ¶ 27.

14  The Sonoma County Sheriff's Department, responsible for the MADF, has adopted a

15  "Critical Incident Protocol" which governs the Sheriff's Department's response to fatal injuries. *Id.*

16  ¶¶ 37-38.  The protocol mandates that "an independent pathologist/Coroner's Office shall be

17  requested to conduct the Coroner's investigation in any fatal injury occurring within the custodial

18  facilities of the Sonoma County Sheriff's Office." *Id.* ¶ 38.  The protocol also mandates the "District

19  Attorney's Investigator will determine if the District Attorney's Office should assist with the

20  investigation." *Id.*  Where the incident is "Employee-Involved," the protocol mandates "that the

21  employer agency, or the venue agency if the necessary investigative resources are not available,

22  does not lead or have overall responsibility for the criminal investigation." *Id.*

23  The Sheriff's Department "did not invoke the Critical Incident Protocol." *Id.* ¶ 39.  On

24  October 29, "[a]pproximately four hours after finding Ms. Marcotte in her cell, the Sonoma County

25  Sheriff's Department requested the assistance of the Napa County Sheriff to conduct a coroner's

26  investigation of the cause of death." *Id.* ¶ 23.  "On September 23, 2021, an Assistant District

27  Attorney for Sonoma County informed [plaintiff's] counsel that the Sheriff's Department 'rarely'

28  invokes the Protocol when there is a death inside the Sonoma County Jail." *Id.* ¶ 40.  The Sonoma

1    County Sheriff's Department "oversaw the investigation of the security breach perpetuated by its

2    own officers and staff." *Id.*

3            On September 23, 2021, the Sonoma County District Attorney's office informed plaintiff's

4    counsel the Sheriff's Department had submitted investigation reports, which the District Attorney

5    referred back to the Sheriff's Department to conduct additional investigation.  *Id.* ¶ 56.  "On

6    September 3, 2021, the Sheriff's Department submitted its additional investigation to the District

7    Attorney." *Id.*  The District Attorney did not provide details of the investigation to plaintiffs, though

8    plaintiffs "learned from third-party witnesses" three suspects were identified: Tiffany Pimentel,

9    Bianca Navarro and Frankie Thompson.  *Id.* ¶ 41.[2]

10           On December 8, 2021, plaintiffs Michelle Saxton, Estate of Michael Marcotte, Estate of

11   Amber Marcotte, and James Clark, filed this action.  Dkt. No. 1 (Complaint).  On January 19, 2022,

12   defendants County of Sonoma, Sonoma County Board of Supervisors, Sonoma County Sheriff's

13   Department, and Sonoma County Sheriff Mark Essick moved to dismiss the original complaint.

14   Dkt. No. 14 (first MTD).  On February 8, 2022, plaintiffs filed a FAC.  Dkt. No. 17 (FAC).  In the

15   FAC, plaintiffs allege federal causes of action arising under 42 U.S.C. § 1983 (causes of action 1,

16   2, 3, 4, and 5) and California state law causes of action (causes of action 6, 7, and 8).  *Id.*

17

18                                    **LEGAL STANDARD**

19           A complaint must contain "a short and plain statement of the claim showing that the pleader

20   is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule

21   12(b)(6). Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

22   allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

23   550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts

24   that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v.*

25   *Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of

26

27           [2] The FAC does not explicitly allege that Navarro and Thompson were also pretrial detainees
28   at MADF, but the FAC implies that was the case through reference to Navarro and Thompson's
     state criminal cases.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

2    level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a

3    formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678

4    (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

5    devoid of 'further factual enhancement.' " *Id*. (quoting *Twombly*, 550 U.S. at 557). "While legal

6    conclusions can provide the framework of a complaint, they must be supported by factual

7    allegations." *Id*. at 679.

8         In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the

9    complaint and draw all reasonable inferences in favor of the non-moving party. See *Usher v. Cty*

10   *of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as

11   true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

12   inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

13   The Ninth Circuit has repeatedly held "a district court should grant leave to amend even if no request

14   to amend the pleading was made, unless it determines that the pleading could not possibly be cured

15   by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and

16   internal quotation marks omitted).

17

18                                                **DISCUSSION**

19         The FAC alleges five causes of action under 42 U.S.C. § 1983.  First, plaintiffs allege

20   defendants intentionally, recklessly, and with deliberate indifference, failed to intervene to prevent

21   narcotics trafficking within the MADF and failed to oversee proper investigation of fatal injuries in

22   the MADF.  FAC ¶¶ 68-71.  Second, plaintiffs allege defendants maintained unconstitutional

23   customs, practices or policies in failing to prevent narcotics trafficking in the MADF, "[f]ailing to

24   maintain monitoring/surveillance of cells, dormitories, and dayrooms, in a manner capable of

25   alerting personnel who could respond to security threats inside the Jail," and failing to "sufficiently

26   investigate and/or supervise the Sheriff's Department's investigations of crimes occurring inside the

27   Jail." *Id.* ¶ 76.  Third, plaintiffs allege defendants failed to train their subordinates to prevent the

28   same constitutional violations.  *Id.* ¶¶ 81-82.  Fourth, plaintiffs allege defendants knowingly

4

1    conspired with each other, Tiffany Pimentel, and Bianca Navarro to violate Ms. Marcotte's civil

2    rights.  *Id.* ¶¶ 89-90.  Fifth, plaintiffs bring an express *Monell* cause of action, alleging the entity

3    defendants deliberately failed to enforce applicable policies and "encouraged a culture of

4    lawlessness" at the MADF by failing to supervise or investigate misconduct of MADF staff.  *Id.*

5    ¶¶ 95-96.

6          Because plaintiffs have named local government defendants – the County of Sonoma,

7    Sonoma County Board of Supervisors, and the Sonoma County Sheriff's Department – the Court

8    addresses whether the local government defendants may be held liable under *Monell v. Dep't of*

9    *Social Servs.*, 436 U.S. 658 (1978).  Defendants argue all five of plaintiffs' causes of action arising

10   under 42 U.S.C. § 1983 are appropriately classified as *Monell* claims whose real defendant in

11   interest is the County of Sonoma.  Dkt. No. 19 at 22 (MTD).  Plaintiffs assert all named defendants

12   are proper and argue "it is Defendants' own refusal to provide relevant information concerning Ms.

13   Marcotte's death that precludes Plaintiffs from alleging further factual detail."  Dkt. No. 24 at 6, 19

14   (Opp. to MTD).

15

16   **I.    *Monell* Liability**

17         Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

18   policy or custom causes a constitutional tort, *see Monell*, 436 U.S. at 690; however, a city or county

19   may not be held vicariously liable for the unconstitutional acts of its employees under the theory of

20   respondeat superior.  *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997);

21   *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).  To establish

22   an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one

23   of the following to survive dismissal of its claim: (1) an unconstitutional custom or policy behind

24   the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to

25   have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct

26   underlying the violation of rights.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50

27   (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. Cty. of Los*

28   *Angeles*, 833 F.3d 1060 (9th Cir. 2016).

United States District Court
Northern District of California

United States District Court
Northern District of California

1        Municipal liability requires a showing that the local government's policy amounts to

2  deliberate indifference to the plaintiff's constitutional rights.  *Plumeau v. School Dist. #40 County*

3  *of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  If the policy is not obviously, facially deficient, "a

4  plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights,

5  of which the relevant policymakers had actual or constructive notice."  *Park v. City and Cty. of*

6  *Honolulu*, 952 F.3d 1136, 1141-43 (9th Cir. 2020) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl.*

7  *v. Brown*, 520 U.S. 397, 409 (1997)).

8        "[W]here a government official is merely negligent in causing the injury, no procedure for

9  compensation is constitutionally required."  *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).  "That

10  injuries inflicted by governmental negligence are not addressed by the United States Constitution is

11  not to say that they may not raise significant legal concerns and lead to the creation of protectible

12  legal interests."  *Daniels v. Williams*, 474 U.S. 327, 333 (1986).  However, "negligence on the part

13  of the municipal defendant [is] a much lower standard of fault than deliberate indifference."

14  *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007)

15        Defendants contend that plaintiffs' allegations are conclusory.  Dkt. No. 19 at 13 (Second

16  MTD).   The Court agrees.   Proof of isolated incidents of unconstitutional action by a non-

17  policymaking employee is insufficient to establish the existence of a municipal policy or custom.

18  *See Rivera v. County of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d

19  1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City*

20  *of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

21        Concerning the first cause of action, failure to intervene, plaintiffs have not alleged facts

22  sufficient to support the conclusion that defendants unreasonably allowed or participated in putting

23  Ms. Marcotte at risk of fentanyl overdose or failed to take remedial action after being aware of the

24  overdose.  *Cf. Sandoval v. Cty. of San Diego*, 985 F.3d 657 (9th Cir.), *cert. denied sub nom. San*

25  *Diego Cty. v. Sandoval*, 142 S. Ct. 711, 211 L. Ed. 2d 400 (2021) (reversing grant of summary

26  judgment for defendants where pretrial detainee showed obvious signs of drug overdose but jail

27  staff refused to take remedial action).

28        The FAC does not provide details regarding other alleged instances of MADF staff

1    facilitating or allowing narcotics trafficking into the MADF sufficient to support the second cause

2    of action, unconstitutional customs, practices or policies.  Plaintiffs allege "numerous incidents of

3    narcotics possession inside jail facilities operated by Sonoma County and the Sonoma County

4    Sheriff's Department," but do not support the conclusion with any factual allegations regarding

5    other incidents.  Dkt. No 17 ¶ 27 (FAC); Dkt. No. 24 at 6 (Opposition) ("inmate overdoses regularly

6    occur").   Conclusory and sparse allegations are not sufficient to show a custom or practice.  *See*

7    *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (liability may not be predicated

8    on isolated or sporadic incidents; "it must be founded on practices of sufficient duration, frequency

9    and consistency that the conduct has become a traditional method of carrying out policy"); *Bauer v.*

10   *City of Pleasanton*, 3:19-cv-04593-LB, 2020 WL 1478328, at *5 (N.D. Cal. Mar. 26, 2020) ("two

11   prior incidents . . . do not show a persistent and widespread custom" (internal quotation marks

12   omitted); *see also Sweiha v. Cty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *4 (N.D.

13   Cal. Oct. 1, 2019) (five incidents with "markedly different facts" do not show a persistent and

14   widespread custom) (internal quotation marks omitted).

15          Similarly, plaintiffs have not alleged sufficient facts in support of the third cause of action,

16   failure to train subordinates.  "A pattern of similar constitutional violations" by untrained employees

17   is ordinarily necessary to establish that the failure to train or supervise is a deliberate policy.

18   *Connick v. Thompson*, 563 U.S. 51, 52 (2011).  A local government's liability under 42 U.S.C.

19   § 1983 is at "its most tenuous," when the claim is based on a failure to train.  *Id.* at 61.  Here,

20   plaintiffs pled failure to "train, supervise, and control" MADF employees "in the proper recognition

21   of narcotics trafficking activity and employment of proper security measures," "in properly

22   monitoring, deterring, controlling and responding to trafficking of narcotics," "in the proper

23   response to dangerous situations," and "[f]ailing to maintain video monitoring/surveillance of

24   inmate areas . . . to ensure safety of inmates."  Dkt. No. 17 ¶ 82 (FAC).  However, plaintiffs have

25   not pled factual allegations regarding other incidents supporting the conclusion that defendants'

26   pattern of similar constitutional violations is a deliberate policy.  *Id.* ¶¶ 80-82.

27          Plaintiffs have also not alleged facts sufficient to support the fourth cause of action,

28   conspiracy to violate civil rights.  To prove a civil conspiracy, the plaintiff must show that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   conspiring parties reached a unity of purpose or common design and understanding, or a meeting of

2   the minds in an unlawful agreement.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir.

3   1999).   A defendant's knowledge of and participation in a conspiracy may be inferred from

4   circumstantial evidence and from evidence of the defendant's actions.  *Id.* at 856-57.  *See Park v.*

5   *Thompson*, 851 F.3d 910 at 928-29 (9th Cir. 2017) (finding plaintiff adequately pled civil conspiracy

6   where she alleged that police detective colluded with Doe defendants to arrange for the filing of

7   criminal charges against a defense witness in an effort to make the witness unavailable to testify).

8   Here, plaintiffs have not pled facts supporting the conclusions (1) defendants conspired to put Ms.

9   Marcotte in obvious risk of a fentanyl overdose or (2) obstructed investigation of Ms. Marcotte's

10   death.  Dkt. No. 17 ¶¶ 88-90 (FAC).

11   Accordingly, the Court GRANTS defendants' motion to dismiss the *Monell* allegations and

12   GRANTS plaintiffs leave to amend.  If plaintiffs wish to pursue a *Monell* claim against Sonoma

13   County, plaintiffs must be able to allege more than isolated or sporadic incidents; rather, plaintiffs

14   must be able to allege "practices of sufficient duration, frequency and consistency that the conduct

15   has become a traditional method of carrying out policy."  *Trevino*, 99 F.3d at 918.

16

17   **II.      Supplemental Jurisdiction**

18   Plaintiffs' sixth cause of action (negligence), seventh cause of action (negligent infliction of

19   emotional distress), and eighth cause of action (intentional infliction of emotional distress) are all

20   California state law causes of action, which are only properly before the Court through supplemental

21   jurisdiction. Dkt. No. 17 ¶¶ 100-121 (FAC).  A district court may decline to exercise supplemental

22   jurisdiction if: "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially

23   predominates over the claim or claims over which the district court has original jurisdiction, (3) the

24   district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

25   circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

26   Regarding 28 U.S.C. § 1367(c)(3), "in the usual case in which all federal-law claims are

27   eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction

28   over the remaining state-law claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.),

1    supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) (quoting *Carnegie-Mellon*

2    *University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  The factors to be considered include economy,

3    convenience, fairness, and comity.  *Acri* at 1001.

4    　　　　Here, all federal-law claims are dismissed with leave to amend.  If plaintiffs are ultimately

5    unable to state a federal cause of action, the Court will decline supplemental jurisdiction over the

6    remaining state-law claims.  Until a determination is made regarding whether plaintiffs have stated

7    a federal cause of action, the Court will not address the parties' arguments regarding the state-law

8    claims.

9

10   　　　　　　　　　　　　　　　　　**CONCLUSION**

11   　　　　For the foregoing reasons, the Court GRANTS defendants' motion to dismiss and GRANTS

12   plaintiffs leave to amend.  **A second amended complaint must be filed on or before May 13,**

13   **2022.**

14

15   　　　　**IT IS SO ORDERED**.

16

17   Dated: April  26, 2022    _____

18   　　　　　　　　　　　　　　SUSAN ILLSTON
　　　　　　　　　　　　　　　United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

9