UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATRINA MCGINNIS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA, *et al.*,<br><br>    Defendants. | Case No. 22-cv-06632-SI<br>Related Case No. 21-cv-09499 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 18 |

Defendants' motion to dismiss the amended complaint is scheduled for a hearing on March 31, 2023. Pursuant to Civil Local Rule 7-1(b), the Court determines that a hearing is unnecessary and that the motion can be resolved on the briefing. For the reasons set forth below, the motion is GRANTED. The Court dismisses the claims against Sheriff Essick and the Sheriff's Department WITHOUT LEAVE TO AMEND. The Court dismisses the first and second causes of action WITH LEAVE TO AMEND. **The amended complaint shall be filed by April 4, 2023. The case management conference scheduled for April 7, 2023 in this case and the *Saxton* case is rescheduled to April 14, 2023 at 3:00 p.m.**

**DISCUSSION**

On October 27, 2022, plaintiff Katrina McGinnis filed this lawsuit against the County of Sonoma, the Sonoma County Sheriff's Department, Sheriff Mark Essick, and Does 1-50, alleging claims arising from the death of her daughter, Amber Marcotte, while Marcotte was detained at the Sonoma County Jail.[1] The amended complaint asserts two causes of action pursuant to 42 U.S.C.

---

[1] Two other cases have also been filed by Marcotte's decedents alleging claims arising from Marcotte's death. The cases have been consolidated in *Saxton et al. v. County of Sonoma et al.*,

§ 1983: (1) Violation of McGinnis's Fourteenth Amendment right to familial association, brought against the County and the other defendants; and (2) Unconstitutional Custom, Practice, or Policy, brought against the County and the other defendants.

## I.     Sheriff Essick and Sonoma County Sheriff's Department

Defendants have moved to dismiss the official capacity claims against Sheriff Essick and the Sheriff's Department as duplicative of the claims against the County and, to the extent McGinnis seeks to hold Sheriff Essick individually liable (which is unclear from the amended complaint), defendants contend the complaint is insufficiently pled and barred by qualified immunity. McGinnis does not oppose defendants' motion on these grounds and her opposition states that she voluntarily dismisses Sheriff Essick and the Sheriff's Department. The Court GRANTS defendants' motion to dismiss these defendants WITHOUT LEAVE TO AMEND.

## II.    Standing to Assert *Monell* Claims

Defendants contend that McGinnis lacks standing to pursue the second cause of action under *Monell*.[2] Defendants argue that McGinnis's *Monell* claim is a "claim for the death of her daughter," and that under California law, the only person who has standing to bring a wrongful death action is Marcotte's daughter, citing California Code of Civil Procedure § 377.60. Mtn. at 6.

"Under § 1983, a decedent's survivors may bring a claim for the violation of their substantive constitutional rights or those of the decedent." *Cotta v. Cnty of Kings*, 79 F. Supp. 3d 1148, 1158 (E.D. Cal. 2015), *rev'd in part on other grounds*, 686 Fed. App'x. 467 (9th Cir. Apr. 6, 2017).

---

Case No. 21-cv-09499 SI, and have been related to this case. In *Saxton*, the Court dismissed claims brought by Marcotte's brother, and permitted *Monell* claims and some state law claims to proceed on behalf of Michelle Saxton as guardian ad litem for M.J., Marcotte's surviving daughter. The facts surrounding Marcotte's death are detailed in the *Saxton* orders and are not repeated here.

[2] The Court notes that while defendants refer to the second cause of action as the "*Monell* claim," the first cause of action is also brought against the County pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), *see* First Amend. Compl. ("FAC") at ¶ 66. Further, with the dismissal of the Sheriff and the Sheriff's Department, the only remaining defendants are the County and Does 1-50, and thus unless and until any individual defendants are named, this lawsuit is currently brought only against the County.

Courts have recognized that a decedent's survivor, including a parent, can bring a *Monell* claim based on the parent's Fourteenth Amendment right to familial association; such claims are not survivorship claims. *See K.C.A. by and through Purvis v. Cnty. of San Diego*, Case No.: 20-CV-2504 W (BLM), 2021 WL 3370790, at *7 (S.D. Cal. Aug. 3, 2021) (denying motion to dismiss *Monell* claim brought by mother and child of decedent for lack of survivorship standing because "Plaintiffs also have individual Fourteenth Amendment rights which would not have been violated had Decedent not died. The County can be held liable under *Monell* for a violation of the Fourteenth Amendment right to substantive due process."); *Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (denying motion to dismiss *Monell* claim brought by decedent's mother where "the court can reasonably infer that, based on the particular circumstances as alleged, the facility's employees so obviously lacked training in providing proper medical care that it resulted in Decedent's death and, consequently, Plaintiff's loss of her son's companionship."); *see also Shelley v. Cnty. of San Joaquin*, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014) (denying motion to dismiss *Monell* claim brought by decedent's sisters and mother and framing claim as one of substantive due process).

The amended complaint does not allege whether the second cause of action is brought as a claim for a violation of McGinnis's constitutional rights or as a survival claim based on the violation of Marcotte's rights. McGinnis's opposition suggests that she is bringing that claim pursuant to the Fourteenth Amendment to assert a violation of her own right to familial association. The Court GRANTS leave to amend so McGinnis can clarify the constitutional basis of the *Monell* claim and the capacity in which that claim is asserted.[3] Further, because the first cause of action asserts *Monell*

---

[3] If McGinnis seeks to bring a survival action, she "bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir.1998) (citation omitted). However, contrary to defendants' assertion that the wrongful death statute determines who can bring a survivor action, "section 377.60 relates to wrongful death actions that are based on personal injuries resulting from the death of another, not survival actions that are based on injuries incurred by the decedent." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013); *see also see also Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir.1994) ("In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death."). California's requirements for standing to bring a survival

1  liability based on policies and practices and is brought pursuant to the Fourteenth Amendment
2  alleging a violation of McGinnis's rights to familial association, if the second cause of action is also
3  brought pursuant to the Fourteenth Amendment based on a deprivation of familial association, it is
4  not clear to the Court that there is a meaningful difference between the first and second causes of
5  action as they relate to the County. If in fact the first and second causes of action are duplicative,
6  McGinnis should consolidate those allegations into one cause of action.

### III. Failure to State a Claim

Finally, defendants contend that the *Monell* allegations are conclusory and that no Ninth Circuit or Supreme Court case has held that "criminal smuggling of drugs and voluntary ingest of drugs creates municipal liability." Mtn. at 7. Defendants also cite a recent Sixth Circuit case, *Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022), to argue that courts rarely allow claims arising from fatal drug overdoses by inmates to proceed against prison officials, emphasizing language in *Zakora* about how that case was not "simply a run-of-the-mill drug-overdose case" because the decedent's survivors alleged that the prison official defendants knew about the decedent's heavy drug use and of specific facts that placed the decedent at risk of overdose. *Id.* at 473-74 (reversing district court's dismissal of several § 1983 claims brought by survivors of inmate who died of drug overdose in prison).

In response, McGinnis argues that this Court has already held in *Saxton* that the plaintiffs in that case stated a claim for *Monell* liability, and McGinnis notes that the second cause of action "is a carbon copy of the *Saxton* plaintiff's second cause of action." Opp'n at 8.

Municipal liability requires a showing that the local government's policy amounts to deliberate indifference to the plaintiff's constitutional rights. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). While it is true that McGinnis's allegations of the unconstitutional policies, practices and customs in the second cause of action are the same as those

---

action are set forth in California Code of Civil Procedure § 377.30. *See Hayes*, 736 F.3d at 1229; *see also See Reyes v. Cnty. of Alameda*, No. 20-CV-03971-DMR, 2020 WL 5107460, at *3 (N.D. Cal. Aug. 31, 2020) (discussing requirements under California law for § 1983 survivorship action).

alleged in *Saxton*, the factual allegations underpinning those allegations are not. As relevant to the *Monell* claims here, the Court dismissed the first amended complaint in *Saxton* because the plaintiffs had not alleged specific facts showing a custom or practice. In response, the *Saxton* plaintiffs added a considerable amount of new detail, including specific allegations about the passage of drugs through the jail's booking area and the failure of jail staff to follow written security and safety policies and procedures, including with regard to Marcotte's cell mate Pimentel who worked as a "trustee" in the booking area and who provided Marcotte with the fatal drugs. *See, e.g.*, *Saxton* Second Amend. Compl. ¶¶ 84-90. The McGinnis complaint does not contain these allegations. These allegations were critical to the Court's conclusion that the second amended *Saxton* complaint stated a *Monell* claim that the County had been deliberately indifferent to Marcotte's constitutional rights.[4] Similarly, the second amended *Saxton* complaint contains more detailed allegations about the County's "Critical Incident Protocol" and the County's failure to follow that protocol than the amended complaint in this case, as well as allegations about inadequacies of other internal investigations conducted by the Sheriff's Department. *Compare, e.g.*, *Saxton* SAC ¶¶ 47-50, 72-73 *with* Amend. Compl. ¶¶ 39-40.

The Court is mindful that "[d]rug smuggling and drug use in prison are intractable problems," *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003), and the Court agrees with the sentiments expressed in *Zakora* that "simple exposure to drugs, without more, does not violate contemporary standards of decency" and "[p]rison officials are not required to show that they have prevented all drugs from entering their facility in order to be protected from liability." *Zakora*, 44 F.4th at 472. However, where a plaintiff alleges specific facts such as those mentioned above, combined with other allegations about the County's knowledge of Marcotte's substance abuse issues; that on the night/early morning of the overdose, Pimentel was found outside of her cell at 4:30 a.m.; the jail was on COVID lockdown; the number of drug-related incidents at the jail; and the "direct

---

[4] Defendants also argue that McGinnis's claims should be evaluated under the Eighth Amendment because Marcotte had been convicted and was detained while awaiting sentencing, and that this Court did not consider the Eighth Amendment's "deliberate indifference" standard when assessing the *Saxton* claims. However, while the Court – and the parties – did not invoke the Eighth Amendment, the Court did apply a deliberate indifference standard. *See generally* Dkt. No. 28 at 5-6 (discussing deliberate indifference standard).

supervision" model of the pod in which Marcotte and Pimentel were housed, it is the Court's view that this is not a "run-of-the-mill drug-overdose-case."

Because the Court is granting leave to amend to clarify the *Monell* claims, the Court also grants McGinnis leave to amend to supplement the factual allegations in support of those claims. As the complaints in the two cases are not consolidated, the Court agrees with defendants that each complaint must stand on its own.

## CONCLUSION

The Court GRANTS defendants' motion as follows: (1) the claims against Sheriff Essick and the Sheriff's Department are DISMISSED WITHOUT LEAVE TO AMEND; (2) the first and second causes of action are DISMISSED WITH LEAVE TO AMEND. When amending, McGinnis shall (1) consolidate the two causes of action as appropriate; (2) clarify whether the *Monell* claims are brought based on a violation of McGinnis's Fourteenth Amendment rights and/or as a survivor action (and if as a survivor action, a showing that McGinnis meets the requirements to bring such an action); and (3) add specific factual allegations in support of the alleged customs, practices and policies, as was done in the operative *Saxton* complaint.

**The amended complaint shall be filed by April 4, 2023. The case management conference scheduled for April 7, 2023 in this case and the *Saxton* case is rescheduled to April 14, 2023 at 3:00 p.m.**

**IT IS SO ORDERED**.

Dated: March 30, 2023

_____
SUSAN ILLSTON
United States District Judge