UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE SAXTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>Defendants. | Case No. 21-cv-09499-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Re: Dkt. No. 120 |

On September 6, 2024, the Court held a hearing on defendants' motion to dismiss certain causes of action alleged in the first amended consolidated complaint ("FACC"). For the reasons set forth below, the Court GRANTS the motion as to the first cause of action and DENIES the balance of the motion.

**DISCUSSION**

**I.    First Cause of Action**

The first cause of action is brought by the Saxton plaintiffs pursuant to 42 U.S.C. § 1983, and alleges that all defendants "failed to intervene" in various ways to prevent fentanyl from being smuggled into the Main Adult Detention Facility ("MADF") in Sonoma County, where Marcotte was being housed. FACC ¶¶ 154-164. That cause of action alleges,

> 157. Though the Sheriff's MADF staff were, like the inmates in the Jail, well aware that the most common method of smuggling narcotics into the MADF was for an inmate worker in booking to receive drugs from detainees in the booking area and then walk the drugs into the Modules, the Sheriff did nothing to bolster security in the booking area in the five months that there was no operational body scanner in the MADF. Though the Sheriff's staff could have suspended their use of narcotics offenders as inmate workers in booking, or implemented cavity searches or mandatory strip searches of the inmate workers in booking, or instituted canine searches of the inmate workers in booking, the Sheriff instead did nothing to compensate for the loss of the body scanner security capability.

158. On October 28, 2020, the MADF staff knew, at about 10:00 p.m., or approximately six hours before Amber Marcotte and Tiffany Pimentel ingested the fentanyl that that caused them both to overdose, that Frankie Thompson and Bianca Navarro were in possession of large amounts of fentanyl inside the booking area of the MADF since about 1:30 in the afternoon. The MADF staff also knew, or should have known since it occurred directly in front of numerous staff, that over the course of the afternoon and early evening, Tiffany Pimentel had extensively interacted with Thompson and Navarro, had asked to release money to Thompson's mother, had not been subjected to a cavity search or body scan before returning to the D Module, and that Pimentel, Thompson and Navarro had all exhibited objective signs of opioid intoxication in the book/wait area.

159. Despite these clear warning signs, once correctional officers discovered that Navarro and Thompson had been holding fentanyl all afternoon in the book/wait area, the MADF correctional staff conducted no follow-up investigation. The MADF staff did not review the video recordings that were readily available to them and captured the hand-to-hand drug transaction between Pimentel and Thompson. The MADF staff also failed to search Pimentel's cell, though they were well aware she had interacted with Thompson and that Thompson was in possession of fentanyl the entire time he spoke with and handed items to Pimentel.

160. Had the MADF staff conducted even basic investigatory steps following their discovery that Thompson had possessed fentanyl in the book/wait area over the entire afternoon, they could have prevented Amber Marcotte's death. Instead, the jail staff did nothing in response to their discovery of Thompson's possession of fentanyl.

FACC ¶¶ 157-160.

Defendants contend that the Saxton plaintiffs have failed to state a claim under this cause of action because the allegations do not show that defendants violated the Eighth Amendment by acting with subjective and objective deliberate indifference with regard to Marcotte and her health and safety.[1] Defendants argue that Marcotte should be considered a convicted prisoner subject to the Eighth Amendment because the Ninth Circuit previously treated a prisoner who was convicted, but not yet sentenced, as a convicted prisoner rather than a pretrial detainee. *See Resnick v. Hayes*, 213 F.3d 443, 447-48 (9th Cir. 2000).[2] Plaintiffs contend that the Fourteenth Amendment's standard of

---

[1] The parties' briefing does not address the difference in analysis of claims brought against entities such as the Sonoma County Sheriff's Department versus individuals such as Sheriff Essick in his individual capacity. Because the Court finds that the FACC does not state a claim for failure to intervene, the Court does not address the difference between § 1983 *Monell* claims against entities versus § 1983 claims against individuals. However, on summary judgment the parties are directed to focus their analysis.

[2] During the earlier motions to dismiss in the *Saxton* case, the parties assumed that the Fourteenth Amendment standard applied, and defendants did not contend that Marcotte should be treated as a convicted prisoner. In the *McGinnis* case, defendants argued in a footnote that the Eighth Amendment should apply, but did not cite *Resnick* or any authority for the proposition that an inmate who had been convicted but not yet sentenced should be treated as a convicted prisoner.

2

1    objective deliberate indifference applies because Marcotte should be considered a pretrial detainee
2    because she had not yet been sentenced.  Plaintiffs also contend that under either standard, the new
3    allegations are sufficient to show that defendants were deliberately indifferent in their failure to take
4    reasonable measures to abate a serious risk of harm to Marcotte.

5            The Court agrees with defendants that under *Resnick*, because Marcotte had entered a plea
6    at the time of her death, she should be considered as a convicted inmate rather than a pretrial
7    detainee.[3]  In *Resnick*, a plaintiff who was convicted but not yet sentenced was found using narcotics
8    in the prison.  *Id*. at 445.  As punishment for the narcotics use, the inmate was placed in the prison's
9    Special Housing Unit (SHU).  *Id*.  The inmate filed suit claiming that his placement in the SHU
10   violated his constitutional rights.  The Ninth Circuit stated, "the question here is whether, for
11   purposes of analyzing whether [p]laintiff had a liberty interest in being free from confinement in the
12   SHU, he should be treated as a pretrial detainee or as a sentenced inmate."  *Id*. at 448.  The Ninth
13   Circuit found "precedent from other circuits supports treating [p]laintiff as a sentenced inmate," and
14   thus analyzed the case as if the plaintiff was a sentenced inmate, even though he was not formally
15   sentenced at the time of the events.  *See id*. (citing *Whitnack v. Douglas County*, 16 F.3d 954, 957
16   (8th Cir. 1994), and *Berry v. Muskogee, Okl.*, 900 F.2d 1489, 1493 (10th Cir. 1990).

17           Plaintiffs argue that *Resnick* should be read narrowly to apply only when an inmate
18   challenges conditions of confinement as punitive.  However, they do not cite any cases interpreting
19   *Resnick* in that manner.  Further, the Court notes that *Berry v. Muskogee*, one of the cases relied
20   upon by the Ninth Circuit in *Resnick*, involved claims similar to the first cause of action.  In *Berry*,
21   a man who had been convicted but not yet sentenced was murdered by fellow inmates in the jail,
22   and his wife and children brought claims under the Fourteenth Amendment alleging that "city
23   officials were responsible for the conditions which permitted the murder to occur."  *Berry*, 900 F.2d
24   at 1494.  The only case cited by plaintiffs that directly supports categorizing Marcotte as a pretrial
25   detainee is *Redbird v. Las Vegas Metro Police Dep't*, Case No. 2:21-cv-00500-APG-VCF, 2021
26   WL 3634663 (D. Nev. Aug. 17, 2021).  However, *Redbird* did not cite *Resnick*, and in holding that

---

[3] The Court is not persuaded by plaintiffs' assertion that Marcotte should not be considered a convicted inmate because the state court dismissed the charges after her death.

the Fourteenth Amendment, the court stated "I am not aware of any cases in which the Ninth Circuit Court of Appeals has directly addressed whether the Eighth Amendment applies to individuals who have been convicted or pleaded guilty but have not yet been sentenced," and thus it appears that the *Redbird* court was not aware of *Resnick*. *Id*. at *3.

In the absence of any Ninth Circuit authority limiting *Resnick* to conditions of confinement claims, the Court concludes that Marcotte should be treated as a convicted prisoner and thus that the Eighth Amendment applies. Under that standard, plaintiffs must allege that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court concludes that allegations in support of the first cause of action do not meet this standard. Plaintiffs do not allege that any deputies were aware that Thompson and Navarro had given fentanyl to Pimentel, that Pimentel had given fentanyl to Marcotte, or that Marcotte ingested fentanyl. Thus, there are no facts to show that any official was aware of facts from which the inference could be drawn that there was a substantial risk of serious harm to Marcotte. Accordingly, the Court GRANTS defendants' motion to dismiss the first cause of action.

## II.     Remaining Issues

Defendants assert that Sheriff Essick is entitled to qualified immunity on the third cause of action alleging failure to train under § 1983, and that all defendants are entitled to dismissal of the negligence and negligent hiring claims. The Court concludes that as a pleading matter, the FACC is sufficient and that defendants may raise these arguments on summary judgment.[4]

**IT IS SO ORDERED**.

Dated: September 12, 2024

SUSAN ILLSTON
United States District Judge

---

[4] The Court notes that the close of fact discovery is on September 13, 2024, and a summary judgment hearing is scheduled for December 6, 2024.