UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE SAXTON, *et al.*,<br><br>           Plaintiffs,<br><br>   v.<br><br>COUNTY OF SONOMA, *et al.*,<br><br>           Defendants. | Case No. 21-cv-09499-SI<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS**<br><br>Re: Dkt. No. 140 |

On October 4, 2024, the Court held a hearing on the motion for terminating sanctions filed by plaintiffs Michelle Saxton, as guardian ad litem for M.J., and the Estate of Amber Marcotte. For the reasons set forth below, the Court hereby DENIES the motion.

**DISCUSSION**

Plaintiffs Michelle Saxton and the Estate of Amber Marcotte request sanctions pursuant to Federal Rule of Civil Procedure 37 based upon defendants' alleged destruction of electronically stored information ("ESI"). Plaintiffs contend that defendants intentionally destroyed emails sent or received by Sonoma County Sheriff's Department employees regarding the circumstances of Amber Marcotte's death on October 29, 2020 in the Sonoma County Main Adult Detention Center, particularly emails regarding the ensuing criminal and Internal Affairs investigations into her death. Plaintiffs seek terminating sanctions, or in the alternative an adverse jury instruction.

Plaintiffs argue that defendants must have destroyed relevant emails because (1) defendants failed to institute a litigation hold until July 15, 2021, and even that litigation hold was inadequate because it only applied to the employees who responded to Ms. Marcotte's cell on the

1    day of her death and did not cover all of the employees involved in the investigations; (2) the
2    Department's email retention policy provides for automatic deletion of emails after 60 days; and
3    (3) defendants produced very few, non-substantive emails sent or received by Department
4    employees regarding Marcotte's death and the investigations.

5          Defendants deny that they destroyed any ESI and they contend that plaintiffs' motion is
6    premised on the false assumption that any such emails ever existed. Defendants assert that it was
7    not the custom or practice of the investigators to use email to communicate with individuals
8    regarding an investigation, and instead the investigators documented investigation activities in
9    their reports. Defendants have submitted declarations from the individuals who led the criminal
10   and administrative investigations, as well as the deputies and medics who were interviewed or
11   otherwise involved in the investigations, and each of these individuals states that they generally
12   did not use email to communicate about Ms. Marcotte's death or the investigations. *See, e.g.*,
13   Petersen Decl. ¶¶ 2-4 (conducted criminal investigation; stating that his criminal investigation
14   "was to determine how the death occurred" and that "[i]n these types of investigations, it is not my
15   custom or practice to use email as part of my investigation. Rather, I gather and review physical
16   evidence, review records and interview witnesses," and that any "substantive" information
17   provided in emails was documented in his report) (Dkt. No. 143-17); Kidder Decl. ¶¶ 2-3
18   (conducted Internal Affairs investigation; stating that his administrative internal investigation
19   focused on "the conduct of the Department's employees" who found Marcotte and that "It is not
20   my practice or custom to frequently use email to conduct an internal investigation. However, if
21   the need arises, I will request specific information which may be delivered to me by email. For
22   instance, in this case, I documented in my report that I received the D-Mod Activity report,
23   Supervisor Activity report, and D-Mod Worker List by email. I identified each of the attached
24   documents in my report and made them exhibits for my report. There was no other substantive
25   information contained in the email. I do not recall using email for any other information in this
26   case.") (Dkt. No. 143-12); *see also id*. Dkt. Nos. 143-2 through 143-11, Dkt. Nos. 143-13 through
27   143-16, Dkt. Nos. 143-18 through 143-22 (declarations from other employees and individuals
28   involved in the investigations stating that they did not use email to communicate about Marcotte's

1    death or the investigations).

2    With regard to the litigation hold, defendants have submitted the declaration of Chief
3    Deputy County Counsel Joshua Myers. Dkt. No. 143-15. Myers states that the County received
4    an evidence preservation letter from plaintiffs' counsel on July 12, 2021, and on July 15, 2021, he
5    initiated a litigation hold. Myers Decl. ¶ 5. Myers states,

> 5. . . . The County's litigation holds include email retention modifications whereby County IT removes a particular email account from the County of Sonoma's 60-day automatic deletion policy for email. In this case, given the claims filed involved the specific events of October 29, 2020, the day Ms. Marcotte passed, I put a hold on the retention policy for email for the six employees who responded to Ms. Marcotte's cell, including correctional deputies Meredith Starrett, Nicole Sahlin, Pierre Ferrari, Joseph Galante, Carol Cornejo, and registered nurse Tiana Rarick. As part of the litigation holds process, each of the individuals subject to the litigation hold were asked specifically if they had any emails related to the incident and each responded "no."
>
> 6. Additionally, the County had litigation holds in place for former Sheriff Mark Essick and Brent Kidder since 2019 and Sheriff Engram since October 2023.

*Id.* ¶¶ 5-6. Defendants note that the County searched the emails subject to the litigation holds and found only attorney-client communications in Essick's and Kidder's emails, which they argue supports their assertion that Department employees did not use email to communicate about Marcotte's death or the investigations.

Finally, defendants emphasize that plaintiffs have been provided with copies of all the investigation reports; videos of the booking area for October 28, 2020; body camera videos from the employees who were the first responders to Marcotte's cell on October 29, 2020; all video and/or audio recordings of every interview conducted by the investigators; over 3,700 pages of documents related to the investigations; and copies of the policies and procedures of the Sheriff's Department. *See generally* Bluestone Decl. (Dkt. No. 143-1). Defendants contend that plaintiffs have not met their burden to show that sanctions are warranted under Federal Rule of Civil Procedure 37.

As amended in 2015, Federal Rule of Civil Procedure 37(e) provides,

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

>(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>>(A) presume that the lost information was unfavorable to the party;
>>
>>(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>>(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Thus, in order to impose sanctions under Rule 37(e), the Court must find that defendants failed to take reasonable steps to preserve ESI and ESI was lost; the ESI cannot be restored or replaced through additional discovery; and either plaintiffs were prejudiced by the loss of ESI (Rule 37(e)(1)) or defendants intended to deprive plaintiffs of ESI (Rule 37(e)(2)). *See Gregory v. State of Montana*, 118 F.4th 1069, 1078-79 (9th Cir. 2024).[1] "The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. CV 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) (collecting cases).

The Court concludes that sanctions are not appropriate because even assuming relevant ESI was lost,[2] the record does not support finding prejudice to plaintiffs or that defendants intentionally destroyed ESI. Plaintiffs speculate that the Department employees who led and participated in the investigations must have used email to communicate about the investigations.

---

[1] With regard to Rule 37(e)(1) sanctions, "[t]he rule does not place a burden of proving or disproving prejudice on one party or the other." *Id*. Advisory Committee Notes to 2015 Amendment to Fed. R. Civ. P. 37. "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information." *Id*. "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id*.

[2] The Court is troubled by the fact that the County did not institute a litigation hold until July 15, 2021. Defendants' opposition acknowledges that a litigation hold should have been placed in April 2021, after plaintiffs' counsel filed government tort claims on behalf of Ms. Saxton and Amber Marcotte's minor daughter, and sent a letter by email requesting reports regarding Marcotte's death, and defendants do not explain why the County waited until July 2021 to institute a litigation hold. Opp'n at 12 (Dkt. No. 143). Further, plaintiffs persuasively argue that the County should have instituted a litigation hold when Marcotte died because litigation is foreseeable when an inmate dies in custody.

1  However, defendants have submitted unrebutted declarations sworn under penalty of perjury from
2  all of the individuals involved stating that it was not their practice to use email to communicate
3  about the investigations, and that if they did receive an email with substantive information, they
4  documented it in their reports. Plaintiffs emphasize Sheriff Engram's deposition testimony in
5  which he stated that he regularly uses email at work, but the Sheriff also testified that he did not
6  use email to communicate about Marcotte's death or the investigations.

Plaintiffs rely heavily on *Estate of Bosco by and through Kozar v. County of Sonoma*, 640 F. Supp. 3d 915 (N.D. Cal. 2022), in which Judge Breyer granted an adverse jury instruction sanction based upon spoliation of evidence. However, the facts in *Bosco* are distinguishable because there it was undisputed that the jail lost critical video surveillance footage showing the exterior of an inmate's safety-cell door during a 14 minute time period when the inmate committed suicide and jail staff discovered the inmate unresponsive in his cell. *Id*. at 920, 924. Judge Breyer found that the plaintiffs were prejudiced because "[t]he jail staff's actions after discovering Bosco and the time that elapsed before they rendered medical aid are important factual issues" and "without the surveillance video, the best evidence of whether jail staff initially denied or delayed medical aid to Bosco is lost." *Id*. at 927. Judge Breyer also found intent to deprive because the defendants provided no explanation for why the detective investigating the death did not notice the missing video during his investigation:

> That Mitchell was able to review some video from earlier in the night should have alerted him to the fact that video from the crucial moments when jail staff were alerted to Bosco's condition very likely existed but was not provided to him. Thus, his failure to alert anyone to those crucial missing minutes and concluding his investigation without the aid of the missing video amounts to more than gross negligence; it is reasonable to infer that Mitchell knew or suspected that the video did exist somewhere and nonetheless kept silent.

*Id*. at 930.

Unlike *Bosco*, here there is no concrete evidence that relevant emails ever existed, much less that critical evidence was destroyed such that plaintiffs have been prejudiced. The Court finds it significant that defendants have provided plaintiffs with fulsome discovery about the investigations, including the reports, video and/or audio recordings of all interviews, and video from the booking area and sally port as well as the first responders' body camera footage. In

5

addition, although it is the Court's view that defendants should have instituted a litigation hold no later than April 2021, and arguably earlier, on this record the Court cannot infer an intent to deprive, and the fact that only attorney-client emails were retrieved from former Sheriff Essick's and Brent Kidder's email accounts (which were subject to litigation holds starting in 2019) supports the conclusion that there was no spoliation of evidence.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for terminating sanctions.

**IT IS SO ORDERED**.

Dated: December 18, 2024

_____
SUSAN ILLSTON
United States District Judge